[No. 12413.   In Bank. — March 15, 1889.]

IN THE MATTER OF H. C. GOOD ET AL., IN INSOLVENCY.

INSOLVENCY ACT — FAILURE TO KEEP PROPER BOOKS — DISCHARGE. — Under the insolvency act of 1880, the failure of a merchant or tradesman to keep proper books of account prevents him from obtaining a discharge.

ID.— GOOD FAITH. — The fact that the omission to keep proper books was in good faith is immaterial.

ID. — WHAT ARE PROPER BOOKS — MONEY LENT.— A loan to a firm for the purpose of being put into the business is a debt of the firm, and should be entered on the books. Where this was not done, and the omitted items would have shown the firm to be utterly insolvent, when according to the books it appeared to be in a prosperous condition, *held*, that the books were not "proper."

APPEAL from an order of the Superior Court of Solano County refusing a discharge in insolvency.

The facts are stated in the opinion.

*Fred W. Hall*, and *J. F. Wendell*, for Appellant.

*Napthaly, Friedenrich & Ackerman*, for Respondents.

HAYNE, C. — H. C. Good and James Roney were partners, " carrying on a grocery and bar business at Vallejo in a small way," for about four years.   On the third day

of July, 1886, they filed a petition in the superior court
of Solano County, asking to be adjudged insolvents, and
in February, 1887, Good applied to the court for a dis-
charge from his debts.   This application was opposed by
some of the creditors, on the ground that the firm of
Good & Roney had not kept proper books of account,
and it was specified that they did not enter in their
books "an indebtedness of said firm to John Good,
amounting to about seven thousand five hundred dollars,
and did not enter in said books an indebtedness of said
firm to Walter C. Good, amounting to about two thou-
sand five hundred dollars, and thereby falsely made it
appear by said books that said firm was indebted in a
less sum, to wit, ten thousand dollars less, than said firm
actually owed, and thereby falsely made it appear by said
books that said firm was solvent, and that the indebted-
ness of said firm did not exceed its assets, whereas said
firm was wholly insolvent, and its actual indebtedness
largely exceeded the value of its assets."

Good filed an answer to the objections made to his dis-
charge, and, admitting that the indebtedness of seven
thousand five hundred dollars to John Good, his father,
and two thousand five hundred dollars to Walter C.
Good, his brother, was not entered in the books of the
firm, averred that the books were not kept by himself,
but by James Roney, and that neither of the partners
was an expert book-keeper, and that they did not con-
sider it necessary to enter those items; that the items
were for moneys loaned to the firm to enable the part-
ners to commence and continue their business, and con-
stituted their capital stock, and that promissory notes
therefor had been given.   He also averred that the omis-
sions were made in good faith, and without any inten-
tion to deceive or defraud any one, or to make the firm
appear solvent when it was insolvent, and that no credi-
tor of the firm was injured or defrauded thereby; that
the books correctly set forth the mercantile transactions

of the firm, and did not purport to show its indebtedness for money borrowed and for which notes had been given, and therefore did not falsely or at all make it appear that the firm was indebted in a less sum than it actually owed, or falsely or at all make it appear that the firm was solvent, or that its indebtedness did not exceed its assets.

Upon the specifications of their grounds of opposition, and the answer thereto, counsel for the opposing creditors moved the court to deny Good's application for a discharge, and the motion was granted. From that order this appeal is prosecuted.

We think that the order was proper. The insolvent act was passed on the 16th of April, 1880, and provides that "no discharge shall be granted, or if granted shall be valid, if the debtor, . . . . being a merchant or tradesman, has not, subsequently to the passage of this act, kept *proper* books of account." (Sec. 49.) The books as kept showed that the firm was in good condition. If the omitted entries had been made, the books would have shown that the firm was utterly insolvent. Was it "proper" that they should show the true condition of affairs? What else are books for? If the omitted entries had been of outside matter, they would not have had to be made. But that is simply because the statute does not require books to be .kept as to outside matters. These entries were not in :relation to outside matters. They were for money lent *to the firm* as such, for the express purpose of being ·put into the business. Consequently the debt was a debt of the firm. Is it not "proper" that the books of the firm should show the debts of the firm?

But stress is laid upon the fact that the omission was "in good faith." This simply amounts to saying that, although the partners did not comply with the law, they did not mean anything ·by it. This might be material if it were proposed to inflict a positive punishment on

them. But no crime is charged against them. They were simply offered a valuable privilege upon certain conditions; and they have not complied with the conditions. Good faith in the matter may enter into the question under certain circumstances; but it is not controlling. Suppose that a merchant should not keep any books at all. Would it make any difference that he acted in perfect good faith, and did not think that books were necessary? Or suppose that in perfect good faith, and from sheer stupidity, he kept books that were utterly incomprehensible. Would it avail him that his intentions were good? We do not think that it would. As said by Grier, J., in *In re Solomon*, 2 Nat. Bank. Reg. 287, concerning a similar provision in the federal bankrupt law, the object of the provision was "to enable any competent person to determine from the books and invoices the real condition of the debtor's affairs." Or, as said by Blatchford, J., in *In re Garrison*, 7 Nat. Bank. Reg. 287, the purpose was to require them to "keep such books in relation to their business as will furnish an intelligent account to their creditors of the state and course of their business transactions; not leaving such account to be made up from memory, or from sources other than such books. The requirement is, in our judgment, a wholesome one. It is difficult to prove fraud or want of "good faith." Any lawyer who has had much experience in this class of cases knows that, as a rule, creditors for moderate amounts prefer to let the matter go rather than to undertake the difficult and expensive task of a contest upon such a basis. Crowds of fraudulent bankruptcies take place in consequence. In view of this, the statute has very wisely made the failure to keep proper books one of the tests.

As a matter of course, trivial inaccuracies are not to be regarded. And books which would be proper for one kind of business might not be proper for another. The provision, like every other, must receive a reasonable

construction.   But we do not think that a set of books which shows that the firm was in good condition, when in fact it was utterly insolvent, can be held to be "proper" in any view.

We therefore advise that the order appealed from be affirmed.

FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the order appealed from is affirmed.

PATERSON, J., dissenting.—I dissent.   As the motion was made upon the pleadings, all the averments of the answer are taken as true.   It is therefore admitted that proper books were kept of all the mercantile transactions of the firm; that the omissions complained of were made in good faith, without any intent to deceive or defraud any one, and that no creditor of the firm was injured or defrauded thereby; that the partners honestly supposed it was not necessary to enter in their books accounts of moneys which they had borrower on their promissory notes before commencing business, and which constituted their capital stock.

Now, conceding that some notes or memoranda of this borrower money should have been entered in the books, the question is, Did the failure to make the entries, under the circumstances shown, necessarily deprive the appellant of all right to a discharge from his debts?   I am unable to see any good or sufficient ground for holding that it did.   The statute was intended to be beneficent in its scope and purposes.   In passing it, the legislature evidently thought that the best interests of the state and of its citizens would be promoted, if one who had become insolvent while endeavoring honestly and fairly to carry on some business could surrender his property to his creditors, and then be discharged from his debts, and permitted to commence his business

life anew. Many restrictions were thrown around the proceedings, but they were intended mainly to hinder fraudulent and dishonest debtors in their efforts to escape from the just claims of their creditors.

An examination of the section of the insolvent act referred to will show that the keeping of books is made a condition of discharge only in case of merchants and tradesmen. It will also be seen that while many grounds for denying the discharge are specified, all but two of them are based upon the fraudulent and wrongful acts of the debtor. The exceptions are, the failure to keep proper books of account by the merchant or tradesman, and an application for discharge made within three years next after a prior discharge. Each case must depend upon its own peculiar circumstances. In *In re Graves*, 24 Fed. Rep. 551, the court said: "No fraud or dishonesty is charged, and it would seem not to be the policy of the courts to keep a young man under the harrow for years, when the only accusation against him is, that he failed to insert in his cash-book the items of his daily sales"; and it was held that although his cash-book was imperfect, inartistic, and inaccurate in a strictly commercial sense, it was not so improperly kept as to justify the court in withholding the discharge.

McFarland, J., concurred in the views expressed by by Mr. Justice Paterson.

Rehearing denied.